**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David G. Plummer, | No. CV-19-05379-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff David G. Plummer's application for disability insurance benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 18, "Def. Br."), and Plaintiff's Reply Brief (Doc. 21, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and now reverses and remands for further proceedings.

**I.    BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on June 4, 2015, for a period of disability beginning on October 2, 2014. (R. at 30.) His claim was denied initially on September 19, 2015, and upon reconsideration on March 28, 2016. (*Id.*) The hearing on Plaintiff's claim occurred on July 13, 2017. (*Id.*) Plaintiff did not appear at the hearing but was represented by a non-attorney representative, Andrew Clark. (*Id.*)

On March 13, 2018, the ALJ denied Plaintiff's claim. (*Id.* at 41.) Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: depressive disorders (including bipolar disorder) and anxiety disorders. (*Id.* at 34.)

The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 35.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could perform simple, routine tasks and follow short, simple instructions. He could do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period. He can work in proximity to co-workers but not in a cooperative or team effort. He requires a work environment that has no more than superficial interactions with co-workers. He requires a work environment that is predictable and with few work setting changes. He should not [be] require[d] to deal with the general public in a job where the general public is frequently encountered as an essential element of the work process, such as in a sales position. Incidental contact of a superficial nature with the general public is not precluded.

(*Id.* at 36.) Accordingly, the ALJ found that although Plaintiff could not perform his past work, he could perform other jobs that exist in significant numbers in the national economy, including janitor, packager, and assembler. (*Id.* at 40-41.)

Months after the hearing, Plaintiff submitted additional medical evidence. (*Id.* at 2.) On August 12, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (*Id.* at 1-3.) Critically, and as discussed in more detail below, the Appeals Council agreed to consider Plaintiff's new medical evidence, despite its late submission, and concluded that affirmance was warranted because "[t]his evidence does not show a reasonable probability it will change the outcome of the decision." (*Id.* at 2.)

II.     **LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517

n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Although Plaintiff's opening brief is not a model of clarity, Plaintiff appears to raise the following four issues for the Court's consideration: (1) whether the Commissioner erred

in failing to consider the new medical evidence he submitted to the Appeals Council after the ALJ hearing (Pl. Br. at 9-21, 25); (2) whether the ALJ erred by rejecting his self-reports of symptoms (*id.* at 21-24); (3) whether the ALJ erred by failing to consider that his application for long-term disability benefits under state law had been granted (*id.* at 24); and (4) whether the "Administration Breached Its Duty to" him by failing to supplement the record and by denying his request for a continuance of the hearing and/or a change of the hearing location (*id.* at 24-27). As a remedy, Plaintiff seeks a remand for computation of benefits or, alternatively, a remand for further proceedings. (*Id.* at 27-28.)[1]

## A. Late-Submitted Medical Evidence

### 1. **Background**

On April 3, 2017—more than three months before the hearing before the ALJ—Plaintiff was sent a notice (via his representative) informing him that, "[i]f there is any more evidence you . . . wish to submit in this case, please submit it promptly." (R. 457.) Plaintiff did not submit any additional evidence before the hearing.

During the hearing on July 13, 2017, the ALJ asked Plaintiff's representative if there was any additional evidence to submit. (*Id.* at 218.) Plaintiff's representative responded that, although he was "pretty sure there is quite a bit out there," he didn't have the records because they "are very old." (*Id.*) Plaintiff's representative also stated that he was aware that SSA regulations require the submission of such evidence at least five days before a hearing. (*Id.*) The ALJ clarified that he was going to decide the case based on the evidence currently in the record, stated that Plaintiff could "certainly" still submit additional evidence, and explained that whether such evidence would be admitted into the record would depend on whether the regulations were followed. (*Id.*)

As of March 13, 2018, when the ALJ issued his decision, Plaintiff still had not submitted any new evidence or voiced any intention to do so. (*Id.* at 32.)

---

[1] Plaintiff also asserts that the ALJ erred by rejecting lay witness testimony from his mother. (Pl. Br. at 24 n.8.) However, Plaintiff does not explain why the ALJ erred in rejecting this testimony and only addresses the argument in a footnote. Because this claim is not properly raised or developed, the Court will not address it.

- 4 -

In June 2018, Plaintiff hired a new representative. (*Id.* at 19.) Plaintiff's new counsel thereafter submitted additional medical records. (*Id.* at 47–212.) Those records include notes from Dr. Jason H. Turner, Plaintiff's treating physician, from October 2015 through January 2016 and from May 2017 through April 2018. (*Id.* at 66–85.) Among other things, Dr. Turner completed a check box form on June 10, 2016 indicating that Plaintiff was moderately limited in his ability to understand and remember instructions, in his ability to carry out detailed instructions, and in his ability to perform activities within a schedule. (*Id.* at 50–52.) Dr. Turner also noted Plaintiff would be markedly limited in his ability to maintain attention and concentration for an extended period and in his ability to complete a normal workday and work week without interruptions from psychologically based symptoms. (*Id.* at 51–52.) In other records, some spanning into 2018, Dr. Turner stated that Plaintiff was not likely to return to work. (*Id.* at 86, 120, 124, 125, 183, 184.)

On August 12, 2019, the Appeals Council issued a three-page notice denying Plaintiff's request for review of the ALJ's decision. (*Id.* at 1-3.) Critically, this document suggests that the Appeals Counsel considered Plaintiff's new medical evidence—as opposed to rejecting it on untimeliness grounds—and concluded that affirmance was warranted on the merits in spite of the new evidence: "You submitted medical evidence from Jason Turner, M.D. . . . . This evidence does not show a reasonable probability it will change the outcome of the decision. We did not exhibit the evidence." (*Id.* at 2.)

2. **Discussion**

When the Appeals Council agrees to consider new evidence that was not before the ALJ, that evidence must be considered part of the record against which the ALJ's decision is to be evaluated. *See, e.g., Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) ("We are persuaded that the administrative record includes evidence submitted to and considered by the Appeals Council."); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) ("[W]e consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council."). Thus, even though there may have been legitimate procedural reasons for the Appeals Council to reject Plaintiff's late-submitted

evidence, its decision not to invoke those procedural reasons—and to instead make a merits-based determination that the new evidence didn't compel reversal of the ALJ's decision—means the new evidence is properly before the Court in this appeal. *Cf. Reyes v. Comm'r of Soc. Sec. Admin.*, 2019 WL 2098755, *3 (D. Ariz. 2019) (rejecting Commissioner's argument that "the additional evidence" sent to the Appeals Council "is not part of the record," and remanding for further proceedings in light of that evidence, because "the Appeals Council made a finding about the merits of the additional evidence and considered whether it would change the outcome of the decision" and "[t]herefore, it is part of the record").

Unfortunately, the Appeals Council provided no reasoning whatsoever in support of its conclusion that Plaintiff's new evidence "does not show a reasonable probability it will change the outcome." The absence of reasoning is particularly problematic because Plaintiff's new evidence included an opinion from his treating physician, Dr. Turner, that his limitations would render him unable to work. To reject such an opinion, an ALJ typically must provide "specific and legitimate" reasons supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Here, because the ALJ provided no reasons for rejecting Dr. Turner's opinion (an understandable omission, given that the opinion wasn't before him) and the Appeals Council took no steps to fill this explanatory void, this Court cannot affirm. The record does not contain any reasoned explanation for rejecting Dr. Turner's opinion, let alone specific and legitimate reasons supported by substantial evidence.

The Commissioner belatedly attempts to supply such reasons in its response brief, identifying various reasons why the ALJ and/or Appeals Council could have deemed the late-submitted evidence unpersuasive. (Def. Br. at 20-22.) But those explanations are not properly before the Court.[2] As the Ninth Circuit has emphasized, "[l]ong-standing

---

[2] The Court further notes that one of the Commissioner's proffered rationales for why the Appeals Council could have rejected Dr. Turner's opinion—that it was set forth in a check-box form (Def. Br. at 21)—has been rejected by the Ninth Circuit. *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Accordingly, this case must be remanded so the ALJ can consider Plaintiff's late-submitted medical evidence.

B. Plaintiff's Remaining Arguments

Although the Court has now determined that reversal is warranted, this conclusion does not obviate the need to resolve all of Plaintiff's other challenges on appeal. As noted, Plaintiff's second and third assignments of error concern the ALJ's consideration of certain categories of evidence, and Plaintiff argues he is entitled to a remand for a computation of benefits—as opposed to a remand for further proceedings—based on those alleged errors. Accordingly, the Court addresses those assignments of error below and concludes that neither has merit. Given these conclusions, there is no need to address Plaintiff's final assignment of error, which challenges the ALJ's refusal to change the date and location of the hearing, because the Court has already determined that a remand for a new hearing is necessary.

1. **Self-Reports Of Symptoms**

a. Background

Although Plaintiff did not attend his hearing (and thus did not provide testimony concerning his symptoms), Plaintiff did submit a written self-report of his symptoms. (R. 404-15). In his self-report, Plaintiff wrote:

> I stopped working upon having a critical mental health collapse involving suicidal ideation, severe depression, and inability to cope with the mental condition resulting in a 5 day hospitalization at a mental hospital on 10/3/2014. I experience the following physical symptoms: trouble sleeping/insomnia; headaches (lasting 1-3 hours). I experience the following mental symptoms: irritability, mood swings; depression (feelings of sadness, lack of interest in activities I once enjoyed, lack of motivation, lost the ability to feel joy and pleasure, thoughts of taking my own life, worthlessness); anxiety (anxious over changes in my life/loss of income, feelings of worry, isolation/avoidance of others, racing thoughts, tense feelings); panic attacks

(feeling of gagging, headache, pain or tightness in chest, shortness of breath, sweating – lasting 1-2 hours). I experience the following limitations: getting along with others, difficulty with changes in routine, short-term memory loss, trouble with concentration/thought process; transposing numbers and words.

(*Id.* at 414.) The ALJ discredited this self-report for three reasons. (*Id.* at 37-39.) First, the ALJ stated that Plaintiff's self-report was contradicted by the "medical evidence." (*Id.* at 37-38.) The specific categories of medical evidence cited by the ALJ were (1) "inpatient treatment notes" from October 4-8, 2014 reflecting that Plaintiff "denied suicidal ideation and all other symptoms, and that his presentation was entirely unremarkable"; (2) treatment notes from Plaintiff's psychiatrist, Dr. Purewal, who "ultimately reported overall improvement with medication" and "consistently noted unremarkable speech, thought processes, insight, and judgment"; and (3) "counseling records and primary care notes" reflecting that Plaintiff denied suicidal ideation, made no mention of panic attacks, and "more often than not" reflected stable, controlled symptoms. (*Id.*) Second, the ALJ stated that Plaintiff's self-report of symptoms was "not entirely consistent" with Plaintiff's self-report of his activities of daily living ("ADLs"). (*Id.* at 38-39.) The ADLs on which the ALJ focused included Plaintiff's admission that he could drive himself for transportation, which is a "dynamic" and "complex" task, and Plaintiff's admission that he made two out-of-state trips in 2015 to search for a new place to live. (*Id.*) The ALJ stated that Plaintiff's "ability to travel long distances to an unfamiliar place, and find and secure housing independently reflects at least basic abilities [in] social and cognitive function." (*Id.*) Third, the ALJ noted that Plaintiff "was considering attending graduate school abroad," which "seems inconsistent with his allegations of disabling mental limitations." (*Id.* at 39.)

b. Discussion

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell*

*v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)).  If so, and absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

Applying these standards, the Court finds no error in the ALJ's rejection of Plaintiff's self-reported symptoms.  As noted, one of the ALJ's proffered reasons for rejecting Plaintiff's self-reported symptoms was inconsistency between those symptoms and Plaintiff's ADLs.  This is a permissible basis for an ALJ to reject a claimant's symptom testimony.  *See, e.g., Molina*, 674 F.3d at 1112-13 ("[T]he ALJ may consider . . . whether the claimant engages in daily activities inconsistent with the alleged symptoms.  While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Orn*, 495 F.3d at 639 (stating that "the two grounds for using [ADLs] to form the basis of an adverse credibility determination" are when the claimant's ADLs (1) "contradict his other testimony" and/or (2) "meet the threshold for transferable work skills").

The ALJ's finding of inconsistency is also supported by substantial evidence.  In *Orn*, the Ninth Circuit faulted an ALJ for concluding that a claimant's performance of household tasks such as "reading, watching television, and coloring in coloring books" was evidence that the claimant could perform work-related functions, holding that the proffered activities were "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace."  495 F.3d at 639.  But here, the ALJ did not rely on Plaintiff's performance of mundane household activities as the source of the inconsistency.  Instead, the ALJ noted that Plaintiff made two different out-of-state trips in an attempt to locate new housing.  It was rational for the ALJ to conclude that Plaintiff's ability to

participate in such trips was inconsistent with his claimed severe limitations. *See, e.g., Dwayne F. v. Comm'r Soc. Sec. Admin.*, 2020 WL 1043445, \*3 (D. Or. 2020) (affirming the ALJ's finding that "plaintiff's symptom allegations [were] inconsistent with his ADLs" in part because "plaintiff testified that he was able to travel to Europe"); *Narbaitz v. Comm'r of Soc. Sec.*, 2019 WL 1517658, \*2 (E.D. Cal. 2019) (concluding that plaintiff's reports of out-of-state travel were "not consistent with Plaintiff's testimony that she cannot work because 'I have too much pain'"). *Cf. Roemer v. Comm'r of Soc. Sec. Admin.*, 2020 WL 7350898, \*5 (D. Ariz. 2020) (identifying claimant's "travel to San Francisco" as permissible basis for rejecting physician's opinion that claimant had severe limitations).

## 2.   **Long-Term Disability Benefits**

One of the medical records before the ALJ was a note from an April 2015 doctor visit. (R. at 708.) The note states that Plaintiff told his doctor that "his long term disability has been approved." (*Id.*)[3]

In his third assignment of error, Plaintiff faults the ALJ for failing to discuss this state-law award of benefits, arguing that the award would have "bolstered" his claim for Social Security benefits. (Pl. Br. at 24.) In response, the Commissioner argues that the state-law award is irrelevant because "Arizona's program is more generous than the federal program, granting disability benefits to employees whose medically determinable impairment prevent them from performing their past work for 30 months, and thereafter from performing either their past work or any other occupation that would pay two-thirds of their pre-disability income," and the ALJ in this case agreed that "Plaintiff could not perform his highly skilled professional work since his alleged onset date in October 2014." (Def. Br. at 19-20.) In reply, Plaintiff acknowledges that Arizona's standard is different from the federal standard but argues in conclusory fashion that the ALJ still should have considered this evidence. (Reply at 7-8.)

"[H]armless error principles apply in the Social Security Act context." *Molina*, 674

---

[3]   The medical records that Plaintiff submitted to the Appeals Council contain additional references to this award. (R. at 168, 203.)

- 10 -

F.3d at 1115.  Here, Plaintiff has not explained why the ALJ's alleged error in failing to consider his state-law award of disability benefits resulted in any harm.  At a minimum, Plaintiff has not explained why the ALJ's alleged error entitles him to a remand for a computation of benefits, and the Court has already determined, for independent reasons, that a remand for further proceedings is necessary.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with the order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this order and close this case.

Dated this 19th day of February, 2021.

_____
Dominic W. Lanza
United States District Judge